IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSEPH A. CRUM, | ) | |
| Plaintiff, | ) | C.A. No. 06-250 Erie |
| | ) | |
| v. | ) | **District Judge McLaughlin** |
| | ) | **Magistrate Judge Baxter** |
| UNITED STATES OF AMERICA, et al., | ) | |
| Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I.     RECOMMENDATION**

It is respectfully recommended that the Motion to Dismiss or, in the Alternative, Motion for Summary Judgment filed on behalf of Defendants Dennis Olson, Jimmie S. Ward, Scott Dodrill, Henry J. Sadowski, and James Sherman, [contained within Document # 27] be granted.

**II.     REPORT**

**A.     Procedural History**

On October 24, 2006, Plaintiff Joseph A. Crum, an inmate formerly incarcerated[1] at the Federal Correctional Institution at McKean in Bradford, Pennsylvania ("FCI-McKean"), filed this *pro se* civil rights action pursuant to Bivens v. Six Unnamed Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), and the Federal Torts Claim Act ("FTCA"), 28 U.S.C. §§ 2671, et seq. Named as Defendants in Plaintiff's original Complaint are: Dennis Olson, M.D. ("Olson"), Clinical Director at FCI-McKean; Walter L. Rhinehart ("Rhinehart"), Chief Psychologist at FCI-McKean; Jimmie S. Ward ("Ward"), Physician Assistant at FCI-McKean; Scott Dodrill ("Dodrill"), Regional Director of the Federal Bureau of Prisons ("BOP"); Henry J. Sadowski ("Sadowski"), Regional Counsel at the BOP; and James F. Sherman ("Sherman"),

---

1. Plaintiff is currently incarcerated at FCC Forrest City, Medium, located in Forrest City, Arizona.

Warden at FCI-McKean.

Plaintiff alleges in his original Complaint that Defendants were negligent and/or violated his Fifth Amendment due process rights and his Eighth Amendment right to be free from cruel and unusual punishment, as follows: (I) Defendant Olson "prescribed the wrong medication, which caused fatal side effects to [Plaintiff's] immune system, and injury to his white blood cells;" (ii) Defendant Ward "failed to provide medical attention to [Plaintiff's] serious medical needs;" (iii) Defendant Rhinehart "failed to provide mental health services for the emotional duress and mental anguish [Plaintiff] was suffering from;" and (iv) Defendants Sherman, Dodrill, and Sadowski "acted with deliberate indifference to [Plaintiff's] serious medical needs by failing to correct the actions of their prison staff, after being notified of various problems through prison grievances."

In response to the original Complaint, Defendants filed a motion to dismiss or, in the alternative, motion for summary judgment [Document # 19], on April 26, 2007, arguing that: (I) Plaintiff's claims should be limited to the allegation that there was a delay in providing him with medical care at FCI McKean, because he failed to exhaust his administrative remedies with regard to his other claims; (ii) the non-treating Defendants should be dismissed because they "merely deferred to the medical professional;" (iii) all Defendants should be dismissed because Plaintiff cannot demonstrate "deliberate indifference;" and (iv) Plaintiff's FTCA claims should be dismissed because the United States is the only proper party to an FTCA action.

On May 21, 2007, Plaintiff filed a memorandum of law in opposition to Defendants' motion [Document # 22], disputing Defendants' argument that he failed to administratively exhaust his claims other than his delayed medical care claim, and providing a more detailed account of his claims. On the same date, Plaintiff also filed an Amended Complaint, asserting his FTCA claim against the United States of America ("United States"), who was added as a Defendant in this case. [Document # 23]. In response to Plaintiff's Amended Complaint, Defendant United States filed an Answer. [Document # 27]. Contained within this Answer is a

footnote by Defendants' counsel renewing the individual Defendants' motion to dismiss or, in the alternative motion for summary judgment, to the extent Plaintiff still intended to pursue his original claims against them.[2] This renewed motion is now ripe for consideration.

### B. Relevant Factual History

On February 23, 1996, Plaintiff was sentenced in the United States District Court for the District of Maryland to 300 months of imprisonment, to be followed by a four year term of supervised release, for Conspiracy to Distribute and Possess with Intent to Distribute a Quantity of a Mixture of Substances Containing Detectable Amounts of Cocaine and Cocaine Base, Possession with Intent to Distribute a Quantity of a Mixture of Substances Containing a Detectable Amount of Cocaine, and Aiding and Abetting, in violation of 21 U.S.C. §§ 846 and 841(a)(1), and 18 U.S.C. § 2. (Document # 20, Exhibit 1a at p. 3). Assuming that Plaintiff receives all Good Conduct Time available, his projected release date is August 25, 2016. (Id. at p. 4).

Plaintiff was designated to FCI McKean to serve a portion of his sentence from August 11, 2005, until his transfer to another correctional facility on January 19, 2006. (Id. at p. 1). Prior to his designation to FCI-McKean, Plaintiff was incarcerated at FCI-Raybrook, New York. While at FCI-Raybrook, Plaintiff had been diagnosed with degenerative cervical spondylosis, and was taking Naproxen, 550 mg, one pill, twice a day. (See Declaration of Victor Loranth, M.D., Clinical Director at FCI Williamsburg, attached as Exhibit 2 to Document # 20 ("Loranth Declaration"), at ¶ 2a). Upon his arrival at FCI-McKean on August 11, 2005, Plaintiff informed

---

[2] At this point, there was some confusion as to whether Plaintiff's Amended Complaint was intended to replace or to supplement the original Complaint, because the Amended Complaint is asserted solely against the United States, without reference to, or incorporation of, the allegations of the original Complaint. This confusion was addressed at a case management conference held before this Court on September 27, 2007, at which time Plaintiff confirmed that he filed the Amended Complaint with the intent to supplement the claims asserted in his original Complaint. To clarify the docket in light of the individual Defendants' renewal of their motion to dismiss within the Answer to Amended Complaint, this Court issued an Order dismissing as moot the original motion to dismiss docketed at Document # 19.

Defendant Ward that he had pain in his right shoulder, lower back, and head, which fluctuated with his body position and movements, and he noted that Naproxen was effective in controlling his pain. Plaintiff was diagnosed with chronic lower back pain, headaches, and chronic right shoulder pain, and was added to FCI-McKean's Chronic Care Clinic so that his cervical spine stenosis could be monitored. (Id. at ¶¶ 2b-c).

On September 16, 2005, Plaintiff complained to Defendant Olson of chronic aching pain in his right shoulder and arm, which increased with abduction. On examination, tenderness was noted in Plaintiff's anterior deltoid region, but he had full range of motion and muscle strength. He was assessed with cervical spine stenosis, and was issued a sneaker pass, an extra mattress pass, and a work restriction. In addition, Naproxen was discontinued, and Indomethacin and Tegretol were prescribed for pain. (Id. at ¶ 2d). On September 22, 2005, Plaintiff again reported problems with his right shoulder, indicating that he injured his shoulder in 2002 and that his pain level was a 10 on a scale of 1 to 10. On examination, Plaintiff was found to have full range of motion, with some stiffness and tenderness, but with normal strength in his extremity. He was assessed with bicipital tendinitis, post-trauma right cuff arthritis, and tension headaches. (Id. at ¶ 2e).

On October 6, 2005, Plaintiff complained of small superficial lacerations without bleeding to the right side of his nose, right ear, and the inside of his lips. He also had a large hematoma to the back of his head, but denied losing consciousness and was alert and oriented. Plaintiff did not indicate how he suffered the injuries. (Id. at ¶ 2g). On October 11, 2005, Defendant Ward examined Plaintiff for an injury assessment and noted multiple trauma areas to the chest; however, there was minimal chest wall pain during compression, and Plaintiff's lungs were clear to auscultation. Plaintiff was assessed with multiple superficial trauma to the head, but no chest pathology was noted, nor was a chest x-ray deemed necessary. (Id. at ¶ 2h). The next day, Plaintiff told Defendant Ward that he was bothered by chest wall pain at a level of 5 on a 1-10 scale. On examination, it was noted that the pain was mainly at the left lateral rib

cage, but there was no swelling, crepitus, or grinding under the arm, ribs or abdomen on palpation, and no organomegaly. In addition, examination of Plaintiff's head revealed no difficulties from trauma, and his injuries appeared to be healed well. Plaintiff was assessed with chest wall pain - benign examination, subconjunctiva hemorrhage of the right eye resolving and bruises around the cranium resolving. He was prescribed Naproxen 500 mg, 2 times a day. (Id. at ¶ 2i).

On October 19, 2005, Plaintiff complained that he was suffering from shoulder and left lower back pain. He also complained that his medication was not helping, and requested an MRI to determine what was causing the pain. (Id. at ¶ 2j). In response to Plaintiff's MRI request, Defendant Ward noted that Plaintiff had a history of chronic right shoulder pain with no recent or acute trauma, and that x-rays had only shown degenerative changes. In addition, Defendant Ward noted that examination of Plaintiff's right shoulder was benign with no subluxation and complete range of motion without difficulty, and normal strength. For these reasons, Defendant Ward found that no MRI was needed and, after consultation, Defendant Olson agreed. (Id. at ¶ 2k).

On October 27, 2008, Defendant Olson reviewed x-rays of Plaintiff's sternum, which indicated no fractures, dislocation, or bony destructive process. (Id. at ¶ 2m). On the same date, Defendant Olson also reviewed x-rays of Plaintiff's chest, which indicated that Plaintiff's lungs were clear and his heart was not enlarged. (Id. at 2n). On November 9, 2005, Plaintiff complained of kidney and liver pain and requested laboratory tests. Because Plaintiff had a history of seizures, with no recent blood work, laboratory tests were ordered. (Id. at ¶ 2o). On November 16, 2005, a complete metabolic liver profile was conducted, which indicated, *inter alia*, that Plaintiff's white blood cell count was low at 2.8 (ref. range 4.3 - 11.1). After reviewing the results of Plaintiff's liver profile, Defendant Olson noted that the results may have been caused by the use of Tegretol and he, thus, discontinued Tegretol and ordered a re-check of Plaintiff's white blood cell count. (Id. at ¶ 2p).

On December 8, 2005, blood samples were taken from Plaintiff for evaluation, which revealed a low white blood cell count of 3.2 (ref. range 4.3 - 11.1). (Id. at ¶ 2r). On December 12, 2008, Defendant Olson reviewed the blood sample results and noted that Plaintiff's white blood cell count was 3,200 (3.2), down from 3,300 (3.3) on March 27, 1996. He also saw Plaintiff in the Chronic Care Clinic, at which time Plaintiff reported no problems with his neck and shoulder, but said that his kidneys were bothering him, and that he had a backache with urination. Plaintiff was assessed with cervical spine stenosis; reduced white blood cell count, improved, with a noted history of chronic reduced white blood cell count; and rule out renal pathology.[3] Plaintiff was educated about his condition, laboratory work was ordered, and Plaintiff was ordered to follow-up in the Chronic Care Clinic in four months. (Id. at ¶ 2r-s).

On January 4, 2006, Plaintiff complained to a physician assistant about multiple chronic problems. On examination, Plaintiff was assessed with degenerative joint disease; cervical spine stenosis and arthritis; overuse syndrome/arthritis; decreasing distance vision, rule out myopia; tension headaches per right upper extremity/cervical spine - degenerative joint disease; stenosis/ arthritis; hemorrhoids; kidney/liver complaints. Plaintiff was educated and counseled regarding pathology of his conditions and the treatment plan; he was directed to use moist heat compresses as directed; he was prescribed hydrocortisone suppositories and Naproxen; and an eye doctor referral was made. (Id. at ¶ 2w).

---

[3]

Plaintiff's medical records indicate the following white blood cell counts on the following dates:

| Date | White Blood Cell Count |
|---|---|
| June 19, 1996 | 2.9 (ref. range 4.0 - 10.6) |
| July 6, 2000 | 3.7 (ref. range 3.5 - 10.5) |
| November 16, 2005 | 2.8 (ref. range 4.3 - 11.1) |
| December 8, 2005 | 3.2 (ref. range 4.3 - 11.1) |
| March 22, 2006 | 3.1 (ref. range 4.3 - 11.1) |
| June 5, 2006 | 2.1 (ref. range 4.3 - 11.1) |
| November 13, 2006 | 3.3 (ref. range 4.3 - 11.1) |

(See Plaintiff's Prison Medical Records, Exhibit 2a attached to Document # 20, at pp. 47, 43, 36-37, 33, 27, 24).

On January 17, 2006, Plaintiff complained to a physician assistant about chronic lumbo sacral back pain and left lower back pain that was at a level of 4-6 on a 1-10 pain scale. Plaintiff stated that Naproxen did not help and wondered if it worsened his discomfort. Plaintiff was told to follow-up in the Chronic Care Clinic, Naproxen was discontinued, and Tylenol was prescribed. (Id. at ¶ 2x). Later the same day, the physician assistant noted that Plaintiff was to be transferred from FCI McKean the next day and, since Tylenol was not deemed necessary, it was discontinued. (Id. at ¶ 2y).

### C.     Standards of Review
#### 1.     Motion to Dismiss

Rule 8(a) of the Federal Rules of Civil Procedure states that a pleading must set forth a claim for relief which contains a short and plain statement of the claim showing that the pleader is entitled to relief. A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Neitzke v. Williams, 490 U.S. 319 (1989); Estelle v. Gamble, 429 U.S. 97 (1976). The issue is not whether the plaintiff will prevail at the end but only whether he should be entitled to offer evidence to support his claim. Neitzke; Scheuer v. Rhodes, 419 U.S. 232 (1974). As the United States Supreme Court recently held in Bell Atlantic Corp. v. Twombly, ___ U.S. ___, 127 S. Ct. 1955 (May 21, 2007), a complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Id. at ___, 1974 (rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)). The court must accept as true all allegations of the complaint and all reasonable factual inferences must be viewed in the light most favorable to plaintiff. Angelastro v. Prudential-Bache Securities, Inc., 764 F.2d 939, 944 (3d Cir. 1985). The Court, however, need not accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret.

Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the court accept legal conclusions set forth as factual allegations. Twombly, ___ U.S. ___, 127 S. Ct. at 1965 citing Papasan v. Allain, 478 U.S. 265, 286 (1986). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, ___ U.S. ___, 127 S.Ct. at 1965. Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." Id. at ___, 1974.

### 2. Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine as to any material fact and that the moving party is entitled to a judgment as matter of law." Fed.R.Civ.P. 56(c). The party moving for summary judgment has the initial burden of showing the basis for its motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Matsushita Elec. Indus. v. Zenith Radio Corp., 475 U.S. 574 (1986); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989)(non-movant must present affirmative evidence-more than a scintilla but less than a preponderance-to support his claims). When deciding a motion for summary judgment, a court must draw all reasonable inferences in the light most favorable to the non-movant. Bailey v. United Airlines, 279 F.3d 194, 198 (3d Cir. 2002) quoting Battaglia v. McKendry, 233 F.3d 720, 722 (3d Cir. 2000). Nonetheless, a party opposing summary judgment must do more than rest upon mere allegations, general denials, or vague statements, rather, "the party opposing the motion must go beyond its pleadings and designate specific facts by use of affidavits, depositions, admissions, or answers to interrogatories showing there is a genuine issue for trial." In re Ikon Office Solutions, 277 F.3d 658, 666 (3d Cir. 2002).

On a motion for summary judgment, the district court may not weigh the credibility or weight of the evidence, rather, it may only determine the existence of a triable issue of fact. Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992). A genuine issue is one in which the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

### 3. *Pro Se* Pleadings

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears "'beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Haines v. Kerner, 404 U.S. 519, 520-521(1972) quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir. 1969)(petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); Smith v. U.S. District Court, 956 F.2d 295 (D.C.Cir. 1992); Freeman v. Department of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir.1997). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Company, 906 F.2d 100, 103 (3d Cir. 1990)(same).

**D. Exhaustion**

**1. The Exhaustion Requirement of the Prison Litigation Reform Act**

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), provides:

> no action shall be brought with respect to prison conditions under section 1983 of this title ... by a prisoner confined in any jail, prisons, or other correctional facility *until such administrative remedies as are available are exhausted*.

Id. (Emphasis added).

The requirement that an inmate exhaust administrative remedies applies to all inmate suits regarding prison life, including those that involve general circumstances as well as particular episodes. Porter v. Nussle, 534 U.S. 516 (2002). See also Concepcion v. Morton, 306 F.3d 1347 (3d Cir. 2002) (for history of exhaustion requirement). Administrative exhaustion must be completed prior to the filing of an action. McCarthy v. Madigan, 503 U.S. 140, 144 (1992). Federal courts are barred from hearing a claim if a plaintiff has failed to exhaust all the available remedies. Grimsley v. Rodriquez, 113 F.3d 1246 (Table), 1997 WL 2356136 (Unpublished Opinion) (10th Cir. May 8, 1997).[4] The exhaustion requirement is not a technicality, rather it is federal law which federal district courts are required to follow. Nyhuis, 204 F.3d at 73 (by using language "no action shall be brought," Congress has "clearly required exhaustion"). There is no "futility" exception to the administrative exhaustion requirement. Ahmed v. Dragovich, 297 F.3d 201, 206 (3d Cir. 2002) citing Nyhuis, 204 F.3d at 78.

According to the U.S. Supreme Court, the PLRA requires "proper exhaustion," meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines. Woodford v. Ngo, ___ U.S. ___, ___, 126 S.Ct. 2378, 2387-2388 (June 22, 2006) ("Proper exhaustion demands compliance with an

---

[4] Importantly, a plaintiff's failure to exhaust his administrative remedies does not deprive the district court of subject matter jurisdiction. Nyhuis v. Reno, 204 F.3d 65, 69 n.4 (3d Cir. 2000) ("...[W]e agree with the clear majority of courts that § 1997e(a) is *not* a jurisdictional requirement, such that failure to comply with the section would deprive federal courts of subject matter jurisdiction.").

agency's deadlines and other critical procedural rules ..."). Importantly, the exhaustion requirement may not be satisfied "by filing an untimely or otherwise procedurally defective ... appeal." Id.

A plaintiff need not affirmatively plead exhaustion, but exhaustion is an affirmative defense which is waived if not properly presented by a defendant. Ray v. Kertes, 285 F.3d 287 (3d Cir. 2002) (holding that "no provision of the PLRA requires pleading exhaustion with particularity," while construing the PLRA requirements in light of the Supreme Court decision in Swierkiewicz v. Sorema, N.A., 534 U.S. 506 (2002)). It is the burden of a defendant asserting the defense to plead and prove it. Id.

### 2. The Procedural Default Component of the Exhaustion Requirement

The United States Court of Appeals for the Third Circuit has explicitly held that the exhaustion requirement of the PLRA includes a procedural default component, by analogizing it to the exhaustion doctrine (with its corollary procedural default component) in the habeas context. Spruill v. Gillis, 372 F.3d 218, 228-229 (3d Cir. 2004).[5] The Circuit explained:

> We believe that Congress's policy objectives will be served by interpreting § 1997e(a)'s exhaustion requirement to include a procedural default component. Based on our earlier discussion of the PLRA's legislative history, [...] Congress seems to have had three interrelated objectives relevant to our inquiry here: (1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of an administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits. Each of these goals is better served by interpreting § 1997e(a)'s exhaustion language to include a procedural default component than by interpreting it merely to require termination of all administrative grievance proceedings.

Id. Having concluded that the PLRA includes a procedural default component, the Court then

---

[4]

There is a split of authority among the Circuits on this issue. Compare Berry v. Kerik, 366 F.3d 85 (2d Cir. 2004), Ross v. County of Bernalillo, 365 F.3d 1181 (10th Cir. 2004), and Pozo v. McCaughtry, 286 F.3d 1022 (7th Cir. 2002), with Thomas v. Woolum, 337 F.3d 720 (6th Cir. 2003).

11

indicated that "prison grievance procedures supply the yardstick for measuring procedural default." Id. at 231.

### 3.     Exhaustion and Procedural Default Applied

To determine whether Plaintiff has exhausted the administrative remedies required by the Bureau of Prisons' grievance system, an understanding of the administrative process available to federal prisoners is essential.  The Bureau of Prisons has established a multi-tier system whereby a federal prisoner may seek formal review of any aspect of his imprisonment. 28 C.F.R. §§ 542.10-542.19 (1997).   First, "an inmate shall ... present an  issue of concern informally to staff, and staff shall attempt to informally resolve the issue before an inmate submits a Request for Administrative Remedy." 28 C.F.R. § 542.13(a).   Second, if an inmate at an institution is unable to informally resolve his complaint, he may file "a formal written Administrative Remedy Request, on the appropriate form (BP-9), [within] 20 calendar days following the date on which the basis for the Request occurred." 28 C.F.R. § 542.14(a).   The warden has twenty (20) days in which to respond. 28 C.F.R. § 542.18. An inmate who is not satisfied with the warden's response may submit an appeal, on the appropriate form (BP-10), to the appropriate Regional Director within twenty (20) calendar days from the date the warden signed the response.  28 C.F.R. § 542.15(a).   An inmate who is not satisfied with the Regional Director's response may submit an appeal, on the appropriate form (BP-11), to the General Counsel within thirty (30) calendar days from the date the Regional Director signed the response. Id. The Regional Director has thirty (30) days and the General Counsel has forty (40) days to respond. 28 C.F.R. § 542.18.

Defendants assert that Plaintiff has failed to properly exhaust his administrative remedies with regard to all of his claims, other than his claim that medical treatment was delayed between September 16, 2005, and January 19, 2006.  This assertion is supported by the Declaration of Rosalind Bingham, Paralegal Specialist  for the BOP's Northeast Regional Office, who certifies

the following:

> 6. Following a search of the administrative remedy index, I determined that [Plaintiff] fully exhausted his available administrative remedies only with respect to his allegation that there was a delay in providing him with medical care in Administrative Remedy Case Number 394585.
>
> 7. [Plaintiff's] administrative remedy records indicate that he attempted to exhaust his administrative remedies with respect to his allegation that Defendant Olson prescribed incorrect or improper medication, in Administrative Remedy Case Number 398655. Specifically, [Plaintiff's] administrative remedy records indicate he exhausted two of the three levels of the administrative remedy process for Administrative Remedy Case Number 398655. However, [Plaintiff's] Central Office Administrative Remedy Appeal in this case was rejected for being late. He was advised that if he could provide verification that the late filing was not due to any fault on his part, he would be permitted to file his Central Office Administrative Remedy Appeal late. Although [Plaintiff] attempted to re-file his appeal, he failed to provide verification that the delay was not caused by any fault on his own part. [Plaintiff] did not attempt to re-file with the verification; therefore he has not exhausted his available administrative remedies for any of the issues raised in Administrative Remedy Case Number 398655.
>
> 8. Based on my review of the administrative remedies filed by [Plaintiff], I have concluded that he has not exhausted his available administrative remedies with respect to the following allegations: (1) Defendant Olson prescribed the wrong medication, (2) Defendant Ward placed him in fear that he may be HIV positive, (3) Defendant Olson falsified his medical records, (4) Defendants Dodrill, Sadowski and Sherman failed to take corrective action, (5) Defendant Ward failed to refer him to a psychologist, and (6) Defendant Rhinehart refused to or failed to provide him with psychological treatment when he presented symptoms of depression....

(See Bingham Declaration attached as Exhibit 1 to Document # 20, Defendant's Brief, at ¶¶ 6-8).

With regard to Plaintiff's claim that Defendant Olson prescribed the wrong medication, Plaintiff has submitted an affidavit stating that, on or about February 16, 2006, he "hand delivered a sealed envelope containing [his] Central Office Appeal to an unidentified officer

who works in the mail room" at USP Canaan,[6] but the rejection notice from the Central Office indicates that his appeal was not received until March 27, 2006. (Document # 23, Exhibit J).[7] Thus, Plaintiff states that his final appeal was untimely due solely to the faulty mail service at USP Canaan. This allegation raises a genuine issue of material fact as to whether Plaintiff was prevented from filing a timely final appeal of this claim, such that his failure to exhaust administrative remedies may be excused. For this reason, summary judgment may not be issued based on Plaintiff's alleged failure to exhaust his administrative remedies with regard to his claim that Defendant Olson prescribed the wrong medication, and this claim will be addressed on its merits.

With regard to all other claims listed by Ms. Bingham in paragraph 8 of her Declaration, Plaintiff has provided no documentary evidence to contradict Ms. Bingham's finding that Plaintiff failed to exhaust his administrative remedies. Accordingly, all of Plaintiff's Bivens claims, other than his delay of medical treatment claim and his claim that Defendant Olson prescribed the wrong medication, should be dismissed for Plaintiff's failure to properly exhaust his administrative remedies.

### E.     Discussion

#### 1.     Eighth Amendment Claims

In the medical context, a constitutional violation under the Eighth Amendment occurs only when state officials are deliberately indifferent to an inmate's serious medical needs. Estelle v. Gamble, 429 U.S. 97 (1976). "In order to establish a violation of [the] constitutional

---

[6] Plaintiff was transferred from FCI-McKean to USP Canaan on or about January 19, 2006. (See Document # 23, Exhibit 1B).

[7] Although this affidavit is attached to Plaintiff's Amended Complaint [Document # 23], it is a matter of record and will be accepted as documentary evidence in opposition to Defendants' motion to dismiss.

14

right to adequate medical care, evidence must show (I) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).

Deliberate indifference to a serious medical need[8] involves the "unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 104. Such indifference is manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury" White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990).

Mere misdiagnosis or negligent treatment is not actionable as an Eighth Amendment claim because medical malpractice is not a constitutional violation. Estelle, 429 U.S. at 106. "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." Durmer, 991 F.2d at 67 (citations omitted).

### a. Prescription of Wrong Medication

Plaintiff alleges that Defendant Olson violated his Eighth Amendment rights by prescribing "the wrong medication, which caused fatal side effects to [Plaintiff's] immune system, and injury to [Plaintiff's] white blood cells." (Document # 5, Complaint, at Section IV.C). In particular, Plaintiff claims that Defendant Olson, despite having knowledge of Plaintiff's history of having a low white blood cell count, prescribed Tegretol, which could cause a decrease in white blood cells. (See Document # 22, Plaintiff's Memorandum, at p. 13). Plaintiff claims further that his white blood cell count did, in fact, decrease after he had been

---

[8] A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth County Correction Institute Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).

taking Tegretol for approximately two months, which caused Defendant Olson to discontinue the prescription. (Id.).

Taking Plaintiff's allegations as true, his claim that Defendant Olson wrongfully prescribed Tegretol does not rise to the level of a constitutional claim, as it does not implicate deliberate indifference involving the "unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 104. At most, Plaintiff's allegations amount to a claim of negligence or medical malpractice, which is not a constitutional violation. As a result, Plaintiff's Eighth Amendment claim that Defendant Olson prescribed the wrong medication should be dismissed.

### b. Delay in Medical Treatment

Plaintiff also claims that his Eighth Amendment rights were violated by Defendants Olson and Ward because they allegedly failed to provide him with medical treatment during the period from September 16, 2005, to January 19, 2006. (Document # 5, Complaint, at p. 5). In particular, Plaintiff alleges that Defendant Olson "refused to send plaintiff to see a[n] outside specialist to further diagnose [his right shoulder and lower back] problem;" "continued refusing to administer the proper treatment of having an MRI done for plaintiff's injuries;" and "deliberately refused to treat plaintiff, knowing and causing needliness [sic] suffering from the medication resulting [in] pain and risk of physical injury...." (Id.). In addition, Plaintiff claims that Defendant Ward "failed to treat plaintiff's injuries...." (Id.).

These claims are belied by the medical record, which demonstrates that Plaintiff was seen by either Defendant Ward or Defendant Olson on, at least, 9 occasions from September 16, 2005, to January 19, 2006. During this time period, Plaintiff was: (I) physically examined on 8 occasions; (ii) issued a sneaker pass, an extra mattress pass, and a work restriction; (iii) prescribed pain medication; (iv) had x-rays taken of his sternum and chest; (v) had a complete metabolic liver profile conducted; and (vi) had blood work and urinalysis performed. (See Loranth Declaration at ¶¶ 2d - 2y). This plethora of medical treatment dispels any notion that

Defendants Olson and Ward were deliberately indifferent to Plaintiff's medical needs. Moreover, with regard to Plaintiff's perceived need for another MRI, it was explained to Plaintiff that an MRI was not necessary because previous MRI's revealed no particular acute pathology, x-rays had shown only degenerative changes and no acute processes, and physical examination revealed complete range of motion and strength in his right shoulder and upper extremity. (Id. at ¶ 2k-2l). Thus, Plaintiff's continued insistence that he was denied necessary medical treatment when his request for an MRI was refused merely represents his disagreement with the course of treatment he was provided. However, a prisoner's disagreement with a course of medical treatment does not sustain a cognizable Eighth Amendment claim. Hampton v. Holmesburg Prison Officials, 546 F.2d 1077, 1080 (3d Cir. 1976).

For the foregoing reasons, summary judgment should be granted in favor of Defendants Olson and Ward with regard to Plaintiff's Eighth Amendment claim that they delayed and/or refused him medical treatment.

### c. FTCA Claims

In their motion, the individual Defendants argue that Plaintiff cannot proceed with his FTCA claim against them because they are not proper parties under the FTCA. The Court agrees. Although the FTCA provides a limited waiver of sovereign immunity for certain torts committed by federal employees, the United States is the only proper defendant in an action brought under the FTCA. 28 U.S.C. § 2679; see, e.g., Good v. Ohio Edison Co., 149 F.3d 413, 418 (6th Cir. 1998); Kennedy v. United States Postal Serv., 145 F.3d 1077, 1078 (9th Cir. 1998); Mars v. Hanberry, 752 F.2d 254, 255 (6th Cir. 1985). Thus, Plaintiff's FTCA claims against the individual Defendants, alleging medical negligence related to the treatment of his various medical conditions, should be dismissed.

### III. CONCLUSION

For the foregoing reasons, it is respectfully recommended that the Motion to Dismiss or, in the Alternative, Motion for Summary Judgment filed on behalf of Defendants Dennis Olson, Jimmie S. Ward, Scott Dodrill, Henry J. Sadowski, and James Sherman, [contained within Document # 27] be granted, and that the individual Defendants be dismissed from this case. The only remaining claim that should be left in this case is Plaintiff's FTCA claim against the United States, to which an Answer has been filed.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to timely file objections may constitute a waiver of any appellate rights. See e.g., Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).

/s/Susan Paradise Baxter
SUSAN PARADISE BAXTER
Chief U.S. Magistrate Judge

Dated: February 27, 2008

cc: The Honorable Sean J. McLaughlin
United States District Judge